# 22-366

## In the United States Court of Appeals for the Second Circuit

SOLID 21, INC.,
PLAINTIFF-COUNTER DEFENDANT-APPELLANT,

*v.*

BREITLING USA, INC., BREITLING SA,
DEFENDANTS-COUNTER CLAIMANTS-APPELLEES

BREITLING AG,
DEFENDANT-APPELLEE,

CVC CAPITAL PARTNERS SICAV-FIS, S.A.,
DEFENDANT.

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
(THE HONORABLE MICHAEL P. SHEA)*

**SPECIAL APPENDIX OF APPELLANT SOLID 21, INC.**

DAVID L. HECHT
YI WEN WU
HECHT PARTNERS LLP
*125 Park Avenue, 25th Floor
New York, NY 10017
(212) 851-6821*

LISA S. BLATT
AMY MASON SAHARIA
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue, S.W.
Washington, DC 20024
(202) 434-5000
asaharia@wc.com*

# TABLE OF CONTENTS

Ruling on Motions for Summary Judgment Granting in Part and Denying in Part Breitling's Motion for Summary Judgment, and Denying Solid 21's Motion for Summary Judgment (Sept. 27, 2021) [ECF 191] ...................................................................................... SA-1

Ruling on Motion for Reconsideration (Dec. 10, 2021) [ECF 204] ........... SA-28

Order Denying Solid 21's Motion for Reconsideration (Jan. 24, 2022) [ECF 216] ................................................................................. SA-40

Ruling as to Remaining Claims (Jan. 24, 2022) [ECF 218]........................ SA-49

Judgment in Favor of Defendants (Jan. 27, 2022) [ECF 219]................... SA-53

15 U.S.C. § 1115 ............................................................................ SA-55

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SOLID 21, INC.,

     *Plaintiff,*

     v.

BREITLING U.S.A., INC.; BREITLING SA; AND
BREITLING AG,

     *Defendant*.

No. 3:19-cv-00514 (MPS)

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

Plaintiff, Solid 21, Inc. ("Solid 21"), is a jewelry company that owns the trademark for RED GOLD® and sells various jewelry items, most notably watches, under its RED GOLD® brand.  Solid 21 sued Defendants, Breitling U.S.A., Inc., Breitling S.A., and Breitling A.G. ("Breitling") alleging claims of trademark infringement under 15 U.S.C.§ 1114, unfair competition under Conn. Gen. Stat. §§ 42-110a, *et. seq.*, trademark dilution under Conn. Gen. Stat. § 35-11i, and false description under common law and 15 U.S.C. §§ 1114(1), 1125(a), (c). Solid 21 alleges that Breitling, which also makes and sells watches, improperly used the "Red Gold" mark in advertising its watches.  Breitling has filed a motion for summary judgment as to the trademark infringement and trademark dilution claims, arguing, among other things, that (1) the "Red Gold" trademark is generic and thus invalid, or (2) if the mark is valid, Breitling's use qualifies as fair use.  Solid 21 has filed its own motion for summary judgment, arguing that Breitling's genericness defense and related counterclaims fail because they target descriptive features of "Red Gold" and do not show that the term relates to an entire genus of products.  As

explained below, I grant in part and deny in part Breitling's motion for summary judgment, and deny Solid 21's motion for summary judgment.

## II.    FACTS

The following facts are taken from the parties' Local Rule 56(a) Statements and are undisputed unless otherwise indicated. Many of the responses made by Solid 21 were non-compliant with Local Rule 56 because they failed to cite specific evidence in the record or address all of the statements to which they purported to respond. In addition, some responses disputed the probative value of the evidence but did not deny the truth of the statement. In all such cases, those statements are deemed admitted and treated as undisputed facts below. *See* Local Rule 56(a)2 (stating that a party opposing summary judgment must respond to each paragraph in moving party's Local Rule 56(a) statement by "admitting or denying the facts and/or objecting to the fact as permitted by the Federal Rule of Civil Procedure 56(c) [allowing objections to inadmissible evidence] …. All denials must meet the [specific citation] requirements of Local Rule 56(a)3."); Local Rule 56(a)(3) (stating that the "[f]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence").

### A.  The Parties

Solid 21 is a jewelry company that "sells watches, bracelets, necklaces, rings, and the like." ECF No. 127-13 ¶ 1; ECF No. 123-2 ¶ 1. Christopher Aire is the founder and CEO of Solid 21. ECF No. 123-2 at 1. In 2002, Solid 21 filed an application with the United States Patent and Trademark Office ("USPTO") to register "Red Gold" in "Goods and Services," specifically for "[f]ine [j]ewelry made of special alloying of gold with a distinct color made into fine jewelry, namely, watches, necklaces, bracelets, rings, anklets, cuff links, hair pins, belt

buckles, tie clips and pegs, and earrings."  ECF No. 123-1 ¶ 13; ECF No. 127-13 ¶ 2; ECF No. 107-19 at 2.  Solid 21 claimed that it first used "Red Gold" in 1989.  ECF No. 123-1 ¶ 16; ECF No. 1 at 4.  The USPTO granted the application on December 16, 2003.  ECF No. 123-1 ¶ 13. "Red Gold" became an incontestable mark in 2009 pursuant to 15 U.S.C. § 1065.[1]  ECF No. 127-13 ¶ 2.

"Breitling SA is a luxury watch company that manufactures and sells watches under the brand BREITLING," and "Breitling U.S.A., Inc. … is the exclusive United States distributor of its parent company."  ECF No. 123-1 ¶ 28.  According to Aire, Breitling is a competitor of Solid 21, but Breitling disputes this.  ECF No. 127-13 ¶ 31.  Solid 21 alleges that "Breitling began advertising [and] using the RED GOLD® trademark in many of the same publications as did Solid 21 as well as in other publications" in the late 2000s,[2] ECF No. 127-13 ¶ 12, and continues to use "red gold" to advertise watches on its website, ECF No. 127-13 ¶ 13.  On Breitling's website, "red gold" appears "in smaller text beneath a watch model's name when identifying the case material and dial color."[3]  ECF No. 123-1 ¶ 29.  Examples of the usage of "red gold" from Breitling's website are below:

---

[1] Breitling asserts that this mark is generic, making it incapable of becoming incontestable.  ECF No. 127-13 ¶ 2.  I do not understand Breitling's argument to mean that Solid 21 has not registered its trademark with the USPTO or that the trademark has not otherwise achieved this "incontestable" status according to the statute.  *See* 15 U.S.C. § 1065 (subject to exceptions not applicable here, an owner's right to use a mark becomes incontestable after five years of use if certain conditions, including non-genericness, are met).

[2] Breitling disputes the accuracy of these statements because Solid 21 failed to attach any advertisements from Breitling from the late 2000s.  Solid 21 only provides an advertisement from 2013.  ECF No. 123-30.

[3] Solid 21 disputes the use of "Red Gold" as a descriptor of material but does not otherwise cite any evidence that rebuts the statement.



ECF No. 107-22.  Breitling has also used "red gold" in its social media posts:



4



ECF No. 123-33; ECF No. 127-13 ¶ 16.  Breitling's President, Thiery Prissert, attests that

Breitling "used the term 'red gold' only to identify a particular type of material—namely, a

reddish-colored gold that is high in copper content—from which various component parts of a

watch (the watch case, bezel, crown, band/bracelet, etc.) can be fabricated."  ECF No. 123-1 ¶

30; ECF No. 107-40 ¶ 6.

Solid 21 has previously filed actions against other watch and jewelry retailers alleging

trademark infringement of "Red Gold."  *See* ECF No. 127-13 ¶ 33.  After one of those lawsuits

was filed against Jomashop, a luxury watch and jewelry retailer, it stopped using "red gold" and

switched to "rose gold" or "pink gold" instead.  *Solid 21, Inc. v. Jomashop Inc.*, No. 19-1179,

2020 WL 9816843, at *1 (E.D.N.Y. Nov. 30, 2020).  Aire states that Ulysse Nardin and Hublot

have also stopped using "Red Gold," although Breitling challenges his personal knowledge on

this point.  ECF No. 127-13 ¶ 32–33; ECF No 123-2 ¶ 9.

## B.  Solid 21's Use of Red Gold

On Solid 21's website, "Red Gold" appears in the following ways:

- "Heart in Red Gold and Full Pave Round Brilliant Diamonds on 16" Red Gold Chain;"
- "Heart in Red Gold with Solitaire Diamond on 16" chain;"
- "Presented in Red Gold on 16" chain;"
- "Dog Tags White Gold with Blue Sapphires and Red Gold with Rubies;"
- "Plain Marquise Earrings in Red Gold;" and
- "Platinum and Red Gold Stackable Diamond Bangles."[4]

ECF No. 123-1 ¶ 33; *see* ECF No. 107-38.  Aire testified that "all jewelry pieces and watches under the Chris Aire Signature Red Gold Collection contain a part that is made of amber hue gold."  ECF No. 123-1 ¶ 23.  Further, Solid 21's internal documents list "red gold" as a type of "metal type" and "metals to be made."[5]  ECF No. 123-1 ¶ 21; *see* ECF No. 107-32.  Breitling alleges that in Solid 21's invoices, the use of "Red Gold" in front of various jewelry indicated the products' material.[6]  ECF No. 123-1 ¶ 20; *see* ECF No. 109-4.  In a previous trademark infringement lawsuit, Solid 21 described "Red Gold" as a "metal alloy gold derivative with an amber hue" in the complaint.  ECF No. 123-1 ¶ 22; *see* ECF No. 107-39 at 11.

### C.  USPTO's Dealings with "Red Gold"

On January 15, 2019, Solid 21 attempted to register "Signature Red Gold" as a trademark for "watches and jewelry."  ECF No. 123-1 ¶ 14; ECF No. 107-20 at 5.  The USPTO issued a "Nonfinal Office Action" in response to the application.  ECF No. 123-1 ¶ 15; ECF No. 107-21.  In the Action, the USPTO states that Solid 21 "must provide a disclaimer of the unregistrable part(s) of the applied-for mark even though the mark as a whole appears to be registrable."  *Id.* at 6.  The USPTO stated that Solid 21 must "disclaim the wording 'red gold' because it is not

---

[4] Solid 21 disputes this statement but offers no explanation or supporting evidence for its dispute.  ECF No. 123-1 ¶ 33.

[5] Solid 21 disputes this statement with additional testimony from Aire but the testimony cited is not in the record.  *See* ECF No. 123-17 at 1–5.

[6] Solid 21 disputes this statement with additional testimony from Aire but the testimony cited is not in the record.  *See* ECF No. 123-17 at 1–5.

inherently distinctive" and "appears to be generic as to the material composition of applicant's goods namely, goods made in significant part of gold including red gold." *Id.* at 7.  The USPTO rejected Solid 21's argument "that it has an incontestable registration for RED GOLD … and a disclaimer is not needed."  *Id.*

Numerous patents "between 1975 and 2019 refer to 'red gold' as a gold alloy or material."  ECF No. 123-1 ¶ 8.  The patents are classified in patent classes including metal treatment, electrolysis, jewelry production, stock material or miscellaneous articles, horology (time measuring systems or devices), and specialized metallurgical processes.[7]  ECF No. 123-1 ¶ 8; ECF No. 107-18.

### D.  Different Colors of Gold Alloys

Due to the soft nature of gold, "the jewelry industry only uses [it] in its pure (i.e., unalloyed) form for special functions."  ECF No. 123-1 ¶ 1.  Gold is sometimes combined with other elements, such as copper and silver, to change its physical characteristics.[8]  *Id.*  The addition of different elements to gold changes the color of the gold alloy, to create "yellow, white, and red gold."[9]  *Id.* ¶ 2; ECF No. 107-4 ¶¶ 7–10.  According to Breitling's expert, Gary Smith, "red gold is an alloy of gold and copper, which may include small amounts of silver,"

---

[7] Solid 21 disputes the significance of the patents in demonstrating consumers' understanding but does not cite evidence or state that the patents do not contain the term "red gold."

[8] Solid 21 disputes that gold is "'commonly' combined with copper and silver in the United States," but fails to cite any evidence to the contrary.  ECF No. 123-1 ¶ 1.  Solid 21 also argues that the International Standards Organization ("ISO") published a standard, ISO 8654, describing the different types of gold alloys but the standard was never adopted in the United States.  This argument does not rebut the facts asserted by Breitling nor is Breitling discussing the ISO standards as it relates to gold alloys in this statement.  Solid 21 cites a report by the National Institute of Standards and Technology of the United States Department of Commerce in support.  ECF No. 123-10.  The page to which Solid 21 cites does not necessarily support its assertion that the United States has never adopted ISO 8654.  The document states only that as of 2012, only 15.5% of the ISO standards were adopted.  *Id.* at 34.

[9] Solid 21 disputes this fact as vague but I do not find that it is vague.  Solid 21 also makes the same unsupported point about ISO standards (*see* footnote 8, *supra*), which is not responsive to the statement.

producing a "reddish hue." [10]  ECF No. 123-1 ¶ 3; *see* ECF No. 107-4 ¶¶ 5, 8.  A "higher copper content yield[s] a darker reddish-brown color, and a lower copper content yield[s] a lighter red gold alloy with more of a pink hue, … commonly [] known as 'pink gold' or 'rose gold.'"  ECF No. 123-1 ¶ 3; ECF No. 107-4 ¶¶ 12–14.

To help define different kinds of gold alloys, the International Standards Organization ("ISO") published International Standard 8654 ("ISO 8654") titled "Jewellery – Colours of gold alloys – Definition, range of colours and designation."  ECF No. 127-13 ¶ 34, 36; ECF No. 123-9.  ISO 8654 provides a "numbered scheme" based on color for seven gold alloys including "4N" for pink and "5N" for red. [11]  ECF No. 123-1 ¶ 5.  The standard specifies the chemical composition of silver, gold, and copper required for each gold alloy.  ECF No. 127-13 ¶ 37; ECF No. 123-9 at 15.  While the words "red" and "gold" do not appear next to each other in the ISO 8654 designations, the standard applies to "objects made of gold alloys or coated by gold alloys."  ECF No. 123-9 at 8; *see* ECF No. 127-13 ¶ 17.  Solid 21 alleges that "ISO 8654 was never adopted in the United States."[12]  ECF No. 127-13 ¶ 35.

Aire testified that "for all the products that [Aire] sell[s] that use the term 'red gold,' each of those products has some element in it that is comprised of the 5N alloy."  107-28 at 10; ECF No. 123-1 ¶ 24.   He also testified that the "red gold" for his jewelry is composed of "gold … copper, could be palladium, could be silver, could be nickel."  ECF No. 107-25 at 7; ECF No. 123-1 ¶ 24.

---

[10] Solid 21 states that it owns an incontestable trademark for "RED GOLD," disputing Breitling's characterization of red gold as a mere descriptor for a metal alloy.  However, Solid 21 does not dispute that Smith makes those findings in his report and does not point to any evidence to rebut those findings.

[11] Solid 21 disputes this statement and alleges that the United States has not adopted ISO 8654 but does not provide evidence to contradict that ISO 8654 creates such a scheme.

[12] Solid 21 cites in support the same report from the National Institution of Standards of Technology, which, as noted, does not provide clear support for its assertion that the United States has never adopted ISO 8654.  *See* footnote 8, supra.

### E.  Texts Using "Red Gold"

In the United States, since the 19th century, dictionaries, encyclopedias, and textbooks describe "red gold" as a gold alloy and often detail the percentages of gold and copper needed to create such an alloy.[13]   ECF No. 123-1 ¶¶ 6, 7.  Multiple media publications have also referenced "red gold."  "From 2001 to 2017," *The Wristwatch Annual* "contains over 1,300 references to 'red gold' watch components by fifty-three watchmakers to describe the kind of gold used in their products."[14]  ECF No. 123-1 ¶ 9; *see* ECF No. 107-7 at 133–208.  Other publications, "such as *Rolling Stone Magazine*, *In Touch Magazine*, *Modern Jeweler*, and *ESPN Magazine* … have use[d] 'red gold' to describe alloy, material, metal, or feature of jewelry when referring to [Solid 21's] own products from as early as 2003 to the present."[15]  ECF No. 123-1 ¶ 10; ECF No. 107-44 ¶ 16; ECF No. 107-34.  *Billboard* wrote that "Aire says that among his hottest-selling items are his … Red Gold jewelry."  ECF No. 123-22 at 3; ECF No. 127-13 ¶ 4.

### F.  Expert Evidence

Breitling disclosed Dr. David Neal as a survey expert.  ECF No. 123-1 ¶ 11.  Dr. Neal concludes that "the results of [his] survey clearly and strongly support a conclusion that purchasers and likely purchasers in the United States of jewelry and watches made with precious metals perceive the name RED GOLD to be a generic term, or a common name, used to describe

---

[13] Solid 21 disputes the literature cited because it argues that the texts are largely technical and "do not demonstrate that the relevant consuming public … understood 'red gold' to be an alloy or a color."  ECF No. 123-1 ¶¶ 6,7.  While Solid 21 disputes the importance or weight of the evidence, it does not dispute Breitling's statement as false.  The literature cited by Breitling does discuss and define "red gold."

[14] Solid 21 disputes the importance of the publication to the relevant consuming public but does not provide evidence that the publication does not contain references to "red gold" from other watchmakers.

[15] Solid 21 disputes this statement, citing testimony by Aire that "the error could have spun from some other write-up, … [b]ut we don't - - we don't use Red Gold to refer to anything made by anybody else but us."  ECF No. 123-17 at 4–5.  Solid 21 claims that this statement refers to press articles that use "red gold."  ECF No. 123-1 ¶ 10.  However, it is not clear from the sections of the deposition provided that Aire is in fact referring to press articles when making this statement.  Before the quoted section, Aire is asked about "Aire Traveler" and whether the availability in steel, 18 karat red gold, and platinum referred to the "three materials that this watch is made out of."  ECF No. 123-17 at 4.

a category of products, rather than a brand name for the products of one company." ECF No. 107-16 ¶ 2.2. Out of the 218 respondents in the survey, 67% of them "indicated that RED GOLD is a common name," 17% had no opinion or did not know, and 16.1% "indicated that RED GOLD is a brand name." *Id.* ¶ 2.2.3. Solid 21 argues that Dr. Neal's survey is rebutted by the work of its own expert, discussed below. ECF No. 123-1 ¶ 11.

Mark Keegan is another Breitling expert who "executed a study of 396 current and prospective luxury watch purchasers to measure consumer awareness of red gold as a luxury watch material, consumer recognition of 'red gold' as a brand when it appears in … Breitling marketing communications, and the extent to which, if at all, the term 'red gold' impacts the consumer purchase decision with regard to luxury watches."[16] ECF No. 107-17 at 4; ECF No. 123-1 ¶ 34. Mr. Keegan concluded that "[r]elevant consumers do not identify 'red gold' as a brand when it appears in an advertisement for … Breitling" and "[w]hen discussing luxury watch attributes and materials in their own words, consumers do not use the term red gold as a brand name." ECF No. 107-17 at 4.

Solid 21 disclosed Dr. Eugene Ericksen to rebut Breitling's survey experts.[17] ECF No. 127-13 ¶ 18. Dr. Ericksen concludes that "'red gold' is not a term that is common or familiar to consumers in the jewelry and watch industry." ECF 123-4 ¶ 4.

---

[16] Solid 21 disputes the accuracy of Mr. Keegan's survey.

[17] Dr. Ericksen has prepared expert reports for Solid 21 in two other "Red Gold" lawsuits against Hublot and Ulysse Nardin. ECF No. 123-4 a¶ 2. He provided the report from the Ulysse Nardin lawsuit that "evaluated surveys conducted by Dr. David Neal and Mr. Mark Keegan." *Id.*; ECF No. 123-5. In this case, the deadline for Dr. Ericksen's rebuttal report was February 10, 2021. ECF No. 123-4 ¶ 3; *see* ECF No. 105 at 8 (stating that the deadline to designate trial experts on which the designating party does not bear the burden of proof is February 10, 2021 by party agreement). Because Breitling filed its motion for summary judgment on January 5, 2021, Dr. Ericksen was not able to complete his report in time for Solid 21's opposition to Breitling's motion. ECF No. 123-4 ¶ 3. Since Dr. Neal and Mr. Keegan set forth similar surveys and results as the ones in the previous litigation, Dr. Ericksen anticipates that his conclusions of their surveys will be "substantially the same as those [he] set forth in [his] earlier report." *Id.* ¶ 4. Breitling disputes Dr. Ericksen's methodology.

Dr. Ronald Butters, Solid 21's linguistic expert, "researched dictionaries and authoritative sources and concluded that, in ordinary English, 'Red Gold' does not refer to a type of precious metal in common usage." ECF No. 127-13 ¶ 17.[18]  According to his findings, while "red gold" has a "specialized assigned meaning in the technical jargon of metallurgists and jewelry experts" as a gold alloy, this does not suggest that this technical jargon is "common knowledge for ordinary speakers," such as consumers of Solid 21 products.  ECF No. 123-3 ¶ 58(B).  Dr. Butters also finds that "red gold" is absent from "authoritative American dictionaries," except for the New Oxford American Dictionary.  *Id.* ¶ 58(D).

### G. Consumer and Industry Evidence

Solid 21 submits declarations from watch consumers, such as Dr. Michael K. Obeng, Shadrach Okoebor, and Samuel Appiah,[19] who "understand RED GOLD® to be [a] brand associated with Solid 21, and not as an alloy for watches and jewelry."  ECF No. 127-13 ¶ 19; *see* ECF Nos. 127-25, 127-36, 127-37.  Breitling alleges that these consumers have a relationship with Aire or have themselves previously used "red gold" to describe the material of a watch. ECF No. 127-13 ¶ 19.  Aire is a friend and mentor to Dr. Obeng.  *Id.*; *see* ECF No. 127-5 at 7–8. Dr. Obeng, in a deposition, testified that "people will probably know more about Red Gold [than Aire] because of the fact that a lot of watchmakers are using the term."  *Id.* at 9.  Okoebor is a former Solid 21 employee, ECF No. 123-36 ¶ 6, and has ordered a wedding ring made of "Red Gold," ECF No. 127-6 at 9.  Appiah previously introduced Aire to his employer, Extra TV, to

---

[18] Dr. Butters submitted a declaration instead of a report because the motion for summary judgment was filed before the deadline for his report.  ECF No. 123-3 at 1.

[19] Breitling argues that Solid 21 did not properly disclose Appiah.  ECF No. 127-13 ¶ 19.  I address the disclosure issue in Section III.B.

film a segment, ECF No. 127-4 at 7–8, and testified that "red gold" is a material in a "Chris Aire watch," ECF No. 127-4 at 14.

Solid 21 also submits declarations from people in the watch and jewelry industry, such as Duvall O'Steen,[20] Lucille Belyayev,[21] and Robert Filotei, who view "red gold" as a brand rather than an alloy.  ECF No. 127-13 ¶ 21–22, 24.  Belyayev and Filotei are also consumers of luxury watches.  *Id.* ¶ 23.  Breitling alleges that these witnesses also have a relationship with Aire or have previously used "red gold" to describe the material of a watch.  ECF No. 127-13 ¶ 19.  O'Steen described Aire as a business acquaintance, ECF No.  127-3 at 10, and has previously stated in a Los Angeles Times interview that "[a]lloy metal suppliers will vary the copper, but whether you call it red, pink or rose gold, it's all the same process," *id.* at 13.  Belyayev "bumped into [Aire] … several times."  ECF No. 127-8 at 13.  Filotei considered Aire as a "good friend" and mentor, ECF No. 127-7 at 9–11, and received a "red gold watch" from Aire, *id.* at 14.[22]

### III.    Evidentiary Disputes

Breitling and Solid 21 have multiple disputes over the evidence the Court may consider in this ruling.  I will address each of them in turn.

---

[20] Breitling argues that Solid 21 did not properly disclose O'Steen.  ECF No. 127-13 ¶ 24.  I address the disclosure issue in Section III.B.

[21] Breitling claims that Belyayev did not execute her declaration as required under 28 U.S.C. § 1746.  ECF No. 127-13 ¶ 21.  Belyayev did properly execute her declaration.  ECF No. 123-29 at 4.

[22] Breitling argues that the declarations from Okoebor, Appiah, Filotei, Obeng, and Belyayev should be disregarded under the sham affidavit rule.  ECF No. 127 at 11–12.  "Under the sham affidavit doctrine, a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Fed. Deposit Ins. Co. v. Murex LLC*, 500 F.Supp.3d 76, 94 (S.D.N.Y. 2020) (internal quotation marks and citation omitted).  However, "[i]f a declarant's prior testimony and summary judgment declaration are not in direct contradiction, [then the] mere tensions or inconsistencies go to credibility, not admissibility, and credibility determinations are not proper at summary judgment."  *Id.* at 95.  None of the evidence offered by Breitling is in "direct contradiction" with the witnesses' alleged perception of "Red Gold" as a brand.  Further, the evidence concerning the relationship between Aire and the declarants goes to credibility.  I reject Breitling's sham affidavit argument and will consider Solid 21's submitted declarations in this ruling.

### A.  Judicial Notice

Breitling asks this Court to take judicial notice of USPTO-issued patents containing the term "red gold" (requests 1–11), Solid 21's trademark applications (requests 12–13), the USPTO's Nonfinal Office Action on "Signature Red Gold" (request 14), and Solid 21's complaint filed in a previous lawsuit (request 15).  ECF No. 107-45.  Solid 21 argues that this Court should deny the request except as to Solid 21's previous complaint (request 15).  ECF No. 122 at 1.  Solid 21 disagrees with Breitling on the scope of judicial notice and argues that courts have not used "the contents of judicially noticed records to prove … that a trademark lacks distinctiveness" and that courts should not "accept [the] contents [of the records] as true."  *Id.*

Generally, courts "may properly take judicial notice of official records of the [USPTO]." *Telebrands Corp. v. Del Laboratories, Inc.*, 719 F.Supp.2d 283, 287 n.3 (S.D.N.Y. 2010).  First, Breitling asks for judicial notice of patent applications that use the term "Red Gold" and Solid 21's own trademark application for "Red Gold."  It is well-established that courts may take notice of USPTO records when analyzing trademark claims.  *See Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F.Supp.2d 288, 323 (S.D.N.Y. 2012) (conducting a search on the USPTO Trademark Electronic Search System that "reveal[ed] 138 live trademark registrations and applications that include the term 'Northeast'"); *BigStar Ent., Inc. v. Next Big Star, Inc.*, 105 F.Supp.2d 185, 204 (S.D.N.Y. 2000) (using a trademark search that showed that "Big Star" was registered as a trademark to various other companies in other markets); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) (crediting "a trademark search [that] revealed the extensive use of the words 'street' and 'wise,'" and finding that the extensive use "weakens the strength of Streetwise's mark"); *Am. Lecithin Co. v. Rebmann*, No. 12-929, 2020 WL 4260989, at *9 (S.D.N.Y. July 24, 2020) (taking judicial notice

of the plaintiff's trademark registrations which showed "that the Domain Names [were] URL version of trademarks registered by [p]laintiffs").   Contrary to Solid 21's assertions, considering these records as indicators of distinctiveness does not require the Court to consider the statements in the records as true.

Breitling also asks the Court to take judicial notice of the USPTO's "Nonfinal Office Action," ECF No.107-21, in response to Solid 21's trademark application to register "Signature Red Gold."  Again, these are part of the USPTO records of which a court may take judicial notice.  While the "decisions of the USPTO are given a degree of deference," a court is not bound by "an initial determination and is obligated to render its own decision on the merits." *Lebewohl v. Heart Attack Grill LLC*, 890 F.Supp.2d 278, 292 (S.D.N.Y. 2012).  Further, the "deference due to the USPTO's decision … is limited [where]," as in this case, "it [is] not a final decision of the USPTO …."  *Id.*

Therefore, I grant each of Breitling's requests for judicial notice as to items 1–15.

### B.  Disclosure of Experts

Breitling objects to the consideration of declarations and reports from multiple Solid 21 witnesses: Dr. Ronald Butters, Duvall O'Steen, and Samuel Appiah.  ECF No. 127-13 ¶¶ 17, 19, 24.  According to Breitling, Solid 21 failed to serve its Rule 26(a)(2) expert disclosures and reports by the December 18, 2020 deadline, and failed to disclose Appiah (a lay witness).  ECF No. 127-1 ¶ 8; ECF No. 127-13 ¶ 19.  Solid 21 emailed Breitling on January 2, 2021 with a list of the names of its experts and then, on January 5, 2021, served its "formal expert disclosures pursuant to FRCP 26(a)(2)."  *Id.*  Breitling alleges that these disclosures failed to provide all the information required by Rule 26(a)(B)(i)–(iii), and that Appiah was not disclosed.  Thus,

Breitling asserts that the evidence provided by these witnesses should be excluded.  ECF No. 127-13 ¶¶ 17, 19, 24.

Under Federal Rule of Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, *unless* the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1) (emphasis added).  The purpose of the rule is "to prevent the 'sandbagging' of an opposing party with new evidence." *Nosal v. Granite Park LLC*, 269 F.R.D. 284, 289 (S.D.N.Y. 2010).  "Despite the mandatory language of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'"  *Id.* (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)). In determining whether to impose the sanction of preclusion, "a court should consider '(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'"  *Id.* (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

Solid 21 does not give a reason for its failure to comply with the disclosure deadline, but it appears that the deadline coincided with Solid 21's change of counsel.  *See* ECF Nos. 97–101. The importance of the testimony to Solid 21 is substantial.  Solid 21 relies on Dr. Butters for his linguistic expertise and his conclusion that "Red Gold" is not generic.  *See* ECF No. 127-13 ¶ 17. O'Steen, as a person in the watch and jewelry industry, states that she understands "Red Gold" to be a brand.  *See id.* ¶ 20–21.  Further, Appiah, a watch consumer, states that he also understands "Red Gold" to be a brand.  *See id.* at ¶ 19.  Solid 21 relies on this testimony in its opposition to

Breitling's motion for summary judgment.  *See* ECF No. 123.  As for Breitling, it is difficult to see how it was prejudiced because there were still close to two months of discovery left when it filed its motion for summary judgment.  The expert witness disclosures were eighteen days late, but there was still enough time left in the discovery period for Breitling to obtain supplemental information about the witnesses.  Indeed, the late disclosure became a significant issue only because Breitling chose to file its motion for summary judgment two months before the close of discovery.  Under the circumstances, I decline to exclude the evidence from the witnesses under Rule 37(c)(1).[23]  *See Nosal*, 269 F.R.D. at 289 ("[P]reclusion of a witness' testimony is a harsh sanction, to be imposed with caution.").

## IV.   PROCEDURAL HISTORY

Solid 21 filed suit against Breitling on April 4, 2019, alleging claims of trademark infringement under 15 U.S.C. § 1114, unfair competition under Conn. Gen. Stat. §§ 42-110a, *et. seq.*, trademark dilution under Conn. Gen. Stat. § 35-11i, and false description under the common law and 15 U.S.C. §§ 1114(1), 1125(a), (c).  ECF No. 1 ¶ 1.  On January 5, 2021, Breitling filed a motion of summary judgment on the trademark infringement claim based on its two affirmative defenses: (1) that the term "Red Gold" is generic, or (2) in the alternative, if the mark is valid, that Breitling's use qualifies as fair use.  Breitling also argued that the trademark dilution claim failed as a matter of law.  ECF No. 107.   On April 21, 2021, Solid 21 filed its own motion for summary judgment, arguing that Breitling's genericness argument actually targets descriptiveness and is precluded because "Red Gold" is an incontestable trademark.  ECF No. 147.

---

[23] Solid 21 omitted Appiah from its Amended Initial Disclosures that it submitted on July 28, 2020.  ECF No. 127-12.  Nonetheless, because Appiah is one of three consumer witnesses, I do not find that Breitling is prejudiced by this nondisclosure.  Thus, I decline to exclude Appiah's declaration under Rule 37(c)(1).

## V.     LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted).  In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).  "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## VI.    DISCUSSION

### A.  Genericness

To prove trademark infringement under the Lanham Act, a plaintiff must demonstrate that "(1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion with that mark."  *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (international quotations and alterations omitted).  The court must first "determine whether the plaintiff has a protected mark."  *K-5 Arms Exch., Inc. v. Arms Exch. of Conn., LLC*, No. 10-1831, 2011 WL 13234050, at *2 (D. Conn. May 26, 2011).  "Marks are

classified, in ascending order of strength, as (1) generic; (2) descriptive; (3) suggestive; [or] (4) arbitrary or fanciful." *Stars Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384–85 (2d Cir. 2005) (internal quotations and citation omitted). "Generic marks are … words identifying the relevant category of goods or services … [and] are not at all distinctive[,] [] thus are not protectable under any circumstances." *Id.* at 385. "Descriptive marks are … words identifying qualities of the product … [and] are not inherently distinctive, but are protectable provided they have acquired secondary meaning." *Id.* "Suggestive marks are [inherently distinctive]" and though "not directly descriptive, … do suggest a quality or qualities of the product through the use of imagination, thought and perception." *Id.* (internal quotations and citations omitted). "Arbitrary or fanciful marks are [also inherently distinctive and] … do not communicate any information about the product either directly or by suggestion." *Id.*

"Once a plaintiff shows that a trademark has a valid registration, the burden of production … shifts to Defendant to proffer evidence that the mark is not valid, *i.e.,* that it is generic." *Tiffany & Co. v. Costco Wholesale Corp.*, 994 F.Supp.2d 474, 480 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). "[M]arks that have been registered with the USPTO are afforded a presumption of validity." *Am. Ort, Inc. v. Israel*, No. 07-2332, 2007 WL 2049733, at *4 (S.D.N.Y. July 17, 2007). Further, "[a] registered mark becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use." *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993); *see also* 15 U.S.C. § 1065. An incontestable mark is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). However, "[e]ven a statutorily incontestable mark

can … be rendered invalid and cancelled if it has come to be 'the generic name for the goods or services, or a portion thereof, for which it is registered.'" *Tiffany & Co.*, 994 F.Supp.2d at 480 (quoting 15 U.S.C. § 1064(3)).  Generic marks "are not at all distinctive and thus not protectable under any circumstances." *Star Indus., Inc.*, 412 F.3d at 385.

A generic term describes the "nature or class" of a product, rather than indicating its "origin." *Feathercombs Inc. v. Solo Prods. Corp.*, 306 F.2d 251, 256 (2d Cir. 1962).  "When considering whether a mark is generic, the key determination to be made is the primary significance of the registered mark to the relevant public." *Tiffany & Co.*, 994 F.Supp.2d at 480. Thus, whether a term is generic "depends on whether consumers in fact perceive that term as the name of a class or, instead, as a term capable of distinguishing among members of the class." *U.S. Pat. & Trademark Off. v. Booking.com B.V.*, 140 S.Ct. 2298, 2307 (2020).  Genericness is a "fact-specific" analysis, *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F.Supp.2d 328, 330 (E.D.N.Y. 2009), that requires courts to consider evidence including "(1) dictionary definitions; (2) generic use of the term by competitors and other persons in the trade; (3) plaintiff's own generic use; (4) generic use in the media; and (5) consumer surveys," *Pilates, Inc. v. Current Concepts, Inc.*, 120 F.Supp.2d 286, 297 (S.D.N.Y. 2000); *see also, Booking.com B.V.*, 140 S.Ct. at 2307 n.6; *In re Reed Elsevier Prop. Inc.,* 482 F.3d 1376, 1378 (Fed. Cir. 2007) (stating that a court may also examine "purchaser testimony, consumer surveys, dictionary definitions, trade journals, newspapers, and other publications").  Courts may also consider whether there are any alternative terms to describe the product because the lack of a "commonly used alternative [that] effectively communicates the same functional information" suggests that the term at issue is generic.  *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 145 (2d Cir. 1997) (quoting *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 306 (3d Cir. 1986)).

Breitling argues that the undisputed facts show that "red gold" is generic.  (ECF No. 107-1 at 19).  In support, Breitling presents evidence from encyclopedias, dictionaries, and textbooks describing "red gold" as a metal alloy.  ECF No. 123-1 ¶ 7.  Breitling also offers evidence of Solid 21's using "Red Gold" to describe its jewelry in invoices and internal documents, and on its website.  ECF Nos. 109-4, 107-32, 107-38.  Breitling also points to the USPTO's Nonfinal Office Action indicating that Solid 21 cannot trademark "Signature Red Gold" unless it includes the following disclaimer: "No claim is made to the exclusive right to use 'RED GOLD' apart from the mark as shown."  ECF No. 107-21 at 8.  Breitling also presents evidence of patent applications, ECF No. 123-1 ¶ 8, other watchmakers' usage of "red gold" in *The Wristwatch Annual*, ECF No. 123-1 ¶ 9, and the appearance of the term in other media publications, such as *Rolling Stone*, as a description of the jewelry's features, ECF No. 123-1 ¶ 10.  Finally, Breitling offers survey evidence from two experts indicating that most consumers view "red gold" as a generic term describing a metal alloy and do not associate it with a brand.  ECF No. 123-1 ¶¶ 11, 34.

Solid 21 disputes the methodology of Breitling's experts and offers its own rebuttal expert, who concludes that "Red Gold" is not a generic term for consumers in the watch and jewelry market.  ECF No. 123-4 ¶ 4.  Solid 21 also disputes the relevance to the issue of consumer perception of the "technical texts" on which it says Breitling relies, ECF No. 123-1 ¶ 7, and provides its own evidence that "red gold" is not found in any "authoritative American dictionaries" except for the New Oxford American Dictionary, ECF No. 123-3 ¶ 58(D).   Solid 21 also provides declarations from consumers and those in the watch and jewelry industry who understand "Red Gold" to be a brand rather than a generic term.  ECF No. 127-13 ¶ 19, 21–22, 24.  Solid 21 argues that "rose gold" is an alternative term for "Red Gold," which, if true, would

weigh against a finding of genericness, ECF No. 123 at 32–33; Breitling argues that "rose gold" denotes a different hue with lower copper content than "red gold," and cites the different ISO classifications for these alloys as evidence, ECF No. 127 at 10–11.  Other jewelry retailers, Ulysse Nardin, Jomashop, and Hublot, stopped using "Red Gold" and switched to "rose gold." ECF No. 123 at 32–33.

All this evidence makes clear that a trial is necessary to resolve the issue of genericness. Breitling and Solid 21 have submitted conflicting expert evidence as well as conflicting evidence from media publications, dictionaries, other texts, and consumers of jewelry.  These conflicts cannot be resolved on a motion for summary judgment.

In its own motion for summary judgment, ECF No. 147, and in its opposition to Breitling's motion for summary judgment, ECF No. 123 at 26–28, Solid 21 also argues that Breitling's genericness challenge fails as a matter of law, because it concerns "descriptiveness" rather than "genericness."  If anything, Solid 21 contends, "'RED GOLD®' describes a quality, characteristic, or ingredient of these products, not the genus of products themselves."  ECF No. 123 at 26.  If this were so, Breitling's challenge would fail, because, in the case of an incontestable mark, like "RED GOLD®," a defendant "may not succeed in a defense that declares the mark is entitled to no protection because it is *descriptive*."  *Gruner + Jahr*, 991 F.2d at 1077 (emphasis added).  A "[g]eneric mark[] give[s] the general name of the product" while a "[d]escriptive mark[] define[s] qualities or characteristics of a product."  *Kendall-Jackson Winery, Ltd. V. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998).

Breitling's focus on the material or ingredients in the jewelry, however, does not necessarily bar it from challenging the mark as generic.  "The lines of demarcation" between categories of marks—such as generic and descriptive—"are not always bright," and "a term that

is in one category for a particular product may be in quite a different one for another."
*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976).  Here, I
understand Breitling's argument to be that "Red Gold" is describing a "genus" of watches or
jewelry made of a particular metal alloy principally of gold and copper.  ECF No. 127 at 8.  Even
though Breitling argues that "Red Gold" describes a component of jewelry, this does not
automatically make the term descriptive rather than generic.  *See In re Wickerware, Inc.*, 227
U.S.P.Q. 970 (BNA) (T.T.A.B. Nov. 8, 1985) (finding that "'wickerware' is the generic name of
the products made of wicker"); *Genesee Brewing Co.*, 124 F.3d at 145–46 (stating that "although
'Honey Brown' is clearly descriptive of [plaintiff's] product … it still might, of necessity, signify
a generic category (or subcategory) of beer").  Further, as noted above, there is a factual dispute
about whether "rose gold" is a satisfactory alternative descriptor to "red gold," which means
there is also a factual dispute about whether Breitling can use any alternative to describe its
products accurately.  *See Genesee Brewing Co.*, 124 F.3d at 146 n.7 (noting that whether the
"LA" mark is merely descriptive of lower alcoholic content for beer or generic depends in part
on a brewer's ability to "indicate the lower alcohol content of his or her beer without using the
mark, 'LA'").  On this record, then, I cannot determine whether "red gold" is a generic or
descriptive term without a trial.  I find only that a reasonable juror could find in favor of
Breitling on the genericness defense based on the evidence in the record.

Because the evidence in the record raises a genuine dispute of fact concerning
genericness, and not just "descriptiveness," I deny Breitling's motion for summary judgment
based on genericness and deny Solid 21's motion for summary judgment in its entirety.

### B.  Fair Use

An "owner's rights in a mark extend only to its significance as an identifying source, not to the original descriptive meanings of a mark, and so where another person uses the words constituting that mark in a purely descriptive sense, this use may qualify as permissible fair use." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (internal quotation marks and citation omitted).  Thus, "[e]ven if a party's conduct would otherwise constitute infringement of another's trademark, fair use provides an absolute defense to liability."  *Dessert Beauty, Inc. v. Fox*, 568 F.Supp.2d 416, 423 (S.D.N.Y. 2008).  To establish fair use, "the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  *Kelly-Brown*, 717 F.3d at 308.

First, Breitling argues that it used "Red Gold" other than as a mark because it used the term "diminutively and within a list of other watch specifications" and "as part of a larger phrase."  ECF No. 127 at 14.  Breitling alleges that it did not highlight "Red Gold" but used it alongside the BREITLING mark.  *Id.*  Solid 21 argues that because Breitling has failed to show that "Red Gold" describes a metal alloy, it is using the term as a mark.  ECF No. 123 at 34.  "A defendant uses a term as a mark when it employs it 'as a symbol to attract public attention.'"  *Tiffany & Co.*, 971 F.3d at 92 (quoting *Kelly-Brown*, 717 F.3d at 306).  A term is also used as a mark when it is employed to identify and distinguish goods and to indicate their source.  *Id.* (citing 15 U.S.C. § 1127).  A court may look to "whether the challenged material appeared on the product itself, on its packaging, or in any other advertising or promotional materials related to [the] product, and the degree to which defendants were trying to create, through repetition … a[n] association between [themselves] and the [mark]."  *Id.* (international quotation marks and citation omitted).  It is undisputed that in the advertisements produced, Breitling uses "red gold" alongside other descriptions of the material of the watch.  For example, on Breitling's website,

"Red Gold" is used in a line under the watch's name and inserted between two descriptors of the

watch material.  For the Navitimer Automatic 35, the line underneath states "18K Red Gold –

Mother-Of-Pearl."  *See* ECF No. 107-22.  The term "Red Gold" is capitalized but so is "Mother-

Of-Pearl," which also refers to the material making up the watch or its components.  Similarly,

for the social media posts, "red gold" is used in a series of hashtags alongside other descriptors

of the watch.  *See* ECF No. 123-33.  This evidence does not suggest that the term was used to

"attract public attention."

Second, Breitling argues that its use of "Red Gold" is descriptive.  ECF No. 107-1 at 24.

"A use of a mark is descriptive if the words [are] used to describe the ingredients, quality or

composition of a product, not the source of the product."  *Dessert Beauty, Inc.*, 568 F.Supp.2d at

425 (internal quotations marks and citation omitted).  In determining whether the use is

descriptive, courts may look at the "physical nature of the use [of the mark] in terms of size,

location, and other characteristics in comparison with the appearance of other descriptive matter

or other trademarks."  *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228

F.3d 56, 65 (2d Cir. 2000) (quoting Restatement (Third) of Unfair Competition § 28 cmt. c.

(1995)).  In addition, courts may consider "whether there are other terms available to describe

the pertinent characteristic."  *Id.* (citing Restatement (Third) of Unfair Competition § 28 cmt. c.

(1995)).  In the advertisements in the record, Breitling's use of "Red Gold" is, again, small and

usually between other descriptors of the watch or the material used.  Breitling also generally does

not use "Red Gold" on its own and the advertisements also include its own BREITLING mark.

These factors all indicate that Breitling's use is descriptive.  As noted above, however, Solid 21

raises a genuine dispute of material fact concerning the alternative terms available for "Red

Gold."  Solid 21 argues that "rose gold" can be used instead as evidenced by the switching of

other watchmakers to "rose gold."  ECF No. 123-37 at 37.  As noted, Breitling counters that

"ISO 8654 and other industry publications specify [] 'red gold,' 'pink gold,' and 'rose gold,'" as

"distinct alloys with varying and specific amounts of copper."  ECF No. 107-1 at 28.

Finally, Breitling argues "[Solid 21] has no evidence that Breitling used the term 'red

gold' to mislead or confuse consumers … or to otherwise capitalize on [Solid 21's] alleged

goodwill."  ECF No. 107-1 at 28.   Solid 21 counters that Breitling's use of its own mark

alongside "Red Gold" does not necessarily prove good faith and cites cases that support that

proposition.  ECF No. 123 at 36; *see Frito-Lay v. Bachman Co.*, 704 F. Supp. 432, 436

(S.D.N.Y. 1989) (finding that the defendant's use of its name alongside the mark at issue did not

"necessarily negate the possibility that [the mark] is also being used in a trademark sense,

especially since it appears on the package as prominently as the housemark"); *Sands, Taylor &

Wood Co. v. Quaker Oats, Inc.*, 978 F.2d 947, 954 (7th Cir. 1992) (rejecting the notion that "a

defendant's use of a term in conjunction with its own trademark [is] *per se* a use other than as a

trademark" (internal quotations and citation omitted); *Dayton Progress Corp. v. Lane Punch

Corp.*, 917 F.2d 836, 840 (4th Cir. 1990) (finding that the "mere inclusion of [corporate] logo on

the product is not sufficient to establish the defense of fair use"); *Woodroast Sys., Inc. v.

Restaurants Unlimited, Inc.*, 793 F. Supp. 906, 914 (D. Minn. 1992) (concluding that the use of

the marks "with the phrase 'wood roasted' … [did] not necessarily preclude denial of [] motion

for summary judgment on issue of fair use because all of those marks are prominent elements of

the menus").  Lack of good faith is indicated by "the subsequent user's intent to trade on the

good will of the trademark holder by creating confusion as to source or sponsorship."  *Kelly-

Brown*, 717 F.3d at 312 (citation omitted).  "Even where there is no direct evidence of intent, 'if

there is additional evidence that supports the inference that the defendant sought to confuse

consumers as to the source of the product, … the inference of bad faith may fairly be drawn.'" *Id.* (quoting *EMI Catalogue P'ship*, 228 F.3d at 66 (internal quotation marks omitted)).  Cases have previously found good faith when the defendant "prominently stated its own marks in a way that overshadows the plaintiff's mark … [b]ut a plaintiff may [] show absence of good faith where a junior user had knowledge or constructive knowledge of the senior user's mark and chose to adopt a similar mark."  *Kelly-Brown*, 717 F.3d at 312–13 (citation omitted).  "Because the [good faith] issue goes to defendants' intent, it 'is best left in the hands of the trier of fact.'" *EMI Catalogue P'ship*, 228 F.3d at 68 (quoting *Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir. 1996)); *see Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991) (stating that "issues of good faith are generally ill-suited for disposition on summary judgment" (alterations and citation omitted)).  Here, although Breitling's advertisements do not use "Red Gold" in a way that overshadows the BREITLING mark, Solid 21 can show the absence of good faith if Breitling had "knowledge or constructive knowledge" of Solid 21's use of "Red Gold" and "chose to adopt a similar mark."  Solid 21 has submitted evidence suggesting that Breitling began advertising in the same publications as Solid 21 using the "Red Gold" mark. ECF No. 127-13 ¶ 12.  Although it is a close call, I find that Solid 21 has submitted enough evidence suggestive of bad faith that summary judgment is inappropriate.

There are disputes of material fact as to fair use.  Thus, I deny the motion for summary judgment based on the fair use defense.

### C.  Dilution Claim

Because Solid 21 fails to respond to Breitling's argument on the dilution claim, ECF No. 123, I conclude that Solid 21 has abandoned this claim.  *See Jackson v. Federal Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) (stating that "a court may, when appropriate, infer from a party's partial

opposition that relevant claims or defenses that are not defended have been abandoned").  I grant Breitling's motion for summary judgment on the trademark dilution claim.

## VII.   CONCLUSION

For the reasons set forth above, I GRANT IN PART and DENY IN PART Breitling's motion for summary judgment, and DENY Solid 21's motion for summary judgment.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
             September 27, 2021

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SOLID 21, INC.,

     *Plaintiff*,

     v.

BREITLING U.S.A., INC.; BREITLING SA; AND
BREITLING AG,

     *Defendants*.

No. 3:19-cv-00514 (MPS)

## RULING ON MOTION FOR RECONSIDERATION

Plaintiff Solid 21, Inc. ("Solid 21") sued Defendants Breitling U.S.A., Breitling S.A., and
Breitling A.G. ("Breitling"), alleging trademark infringement under 15 U.S.C.§ 1114, unfair
competition under Conn. Gen. Stat. §§ 42-110a, *et. seq.*, trademark dilution under Conn. Gen.
Stat. § 35-11i, and false description under common law and 15 U.S.C. §§ 1114(1), 1125(a), (c).
I denied in part Breitling's motion for summary judgment, ECF No. 191, and Breitling now
seeks reconsideration of the portion of my ruling denying summary judgment as to its fair use
defense, ECF No. 195-1 at 5–6.  In the alternative, Breitling requests that the Court certify the
ruling for interlocutory appeal.  Because I agree with Breitling that I overlooked portions of the
record and misapprehended applicable law in finding triable issues of fact as to fair use,
I GRANT Breitling's motion for reconsideration, VACATE the portion of my earlier ruling
denying the motion as to the fair use defense, specifically Section IV.B, ECF No. 191 at 22–26,
GRANT summary judgment to Breitling on the trademark infringement claim based on its fair
use defense, and DENY as moot the request for an interlocutory appeal.

## I.     LEGAL STANDARD

1

The standard on a motion for reconsideration is "strict," and the motion may be granted only if "the moving party can point to controlling decisions or data that the court overlooked," *Lewis v. Guardian Loan Co.*, No. 3:19-CV-704 (CSH), 2019 WL 7882488, at *1 (D. Conn. Oct. 28, 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)), i.e., data or controlling decisions that would "reasonably be expected to alter the conclusion reached by the court." *Id.*  The Second Circuit has further indicated that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations omitted).  A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

## II.    DISCUSSION

I incorporate by reference and assume familiarity with my ruling on the motions for summary judgment.  ECF No. 191; *see Solid 21, Inc. v. Breitling U.S.A., Inc.*, No. 19-cv-514, 2021 WL 4430755 (D. Conn. Sept. 27, 2021).  The discussion of fair use appears in Part VI.B of that ruling.  *See Solid 21*, 2021 WL 4430755 *11–12.

Breitling argues that I erred in finding genuine disputes of material fact as to the "use in a descriptive sense" and good faith elements of its fair use defense.  *See id.*  For the descriptive use element, Breitling argues that I "erroneously used a single discretionary factor, whether an 'alternative term' exists, to raise an issue of triable material fact."  *Id.*  For the good faith

element, Breitling argues that I misconstrued evidence in the record and misapplied law regarding the defendant's knowledge of the plaintiff's trademark. *Id.* at 13–14.

The legal principles governing the fair use defense to trademark infringement are set forth in the summary judgment ruling, and so here I identify only the elements of the defense for context. To establish fair use, "the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). In the summary judgment ruling, I found in favor of Breitling on the first element, agreeing with it that the undisputed evidence in the record showed that it had used "red gold" other than as a mark. *Solid 21*, 2021 WL 4430755 *11. I concluded, however that there were genuine disputes of material facts as to the second and third elements.

### A. Use in A Descriptive Sense

In the summary judgment ruling, I found that Breitling's use of the phrase "red gold" in advertisements—specifically, the small size of the phrase, its placement between other descriptors of the watch or descriptors of the watch material, and Breitling's inclusion of its own mark in the same advertisements—"all indicated that Breitling's use is descriptive." *Id.* I then stated that there was a genuine dispute of material fact as to whether Breitling could have used an alternative term, such as "rose gold," to describe its products. *Id.* at 24–25. Breitling argues that under Second Circuit law, "the absence of alternative terms is a *discretionary* consideration," and that "Second Circuit law has never required the absence of alternative terms for a finding of descriptiveness as a matter of law." ECF No. 195-1 at 9 (emphasis in original). Although I do not agree with Breitling's characterization that consideration of alternative terms is "discretionary" in the sense that I may decline to take account of such terms when they exist, I do agree that, at least in the circumstances of this case, I erred in treating the potential

availability of alternative terms as dispositive of whether Breitling had satisfied the second element of its fair use defense.

In analyzing whether a use is descriptive, the Second Circuit has "looked at whether the mark used describes certain aspects of the alleged infringer's own goods, … whether the mark as used describes an action the alleged infringer hopes consumers will make of its product[,]" and "the physical nature of the use in terms of size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64–65 (2d Cir. 2000) (internal quotation marks and citations omitted).  In addition, "the scope of the fair use should be related to the degree to which the descriptive meaning is relevant to the goods with which it is associated in the alleged infringement, and whether there are other terms available to describe the pertinent characteristic." *Id.* at 65.  As the availability of "other terms," the Second Circuit in *EMI* went on to state as follows: "Where a mark incorporates a term that is the only reasonably available means of describing a characteristic of another's goods, the other's use of that term in a descriptive sense is usually protected by the fair use doctrine." *Id.*  This language does not suggest that in a case where the term is *not* "the only reasonably available means of describing a characteristic of another's goods," the failure to use an alternative term, by itself, prevents the defendant from satisfying the "use in a descriptive sense" element of the fair use defense.   The above-quoted analytical framework from *EMI* is phrased in holistic terms ("we have looked at" and "related to the degree to which") and does not suggest that a single factor is dispositive.

Further, most cases within the Second Circuit that address the availability of alternative terms in the context of a discussion of the descriptive use element of the fair use defense do not treat that factor as dispositive.  Instead, most find either (1) descriptive use when there is no

4

**SA-31**

alternative term *and* other evidence supports descriptive use, or (2) a genuine dispute of material fact when there is an alternative term *and* other evidence that supports non-descriptive use.

In *Dessert Beauty, Inc. v. Fox*, 568 F.Supp.2d 416, 419 (S.D.N.Y. 2008), the plaintiff, which sought a declaratory judgment that its use of the phrase, "love potion," on perfume did not violate the defendant's registered trademark "LOVE POTION" for perfumed essential oils, won summary judgment based on fair use. There, the court relied on multiple factors to find that the plaintiff's use of "love potion" was descriptive, including that (1) the words were descriptive, (2) the phrase was a common term evidenced by dictionary entries and the eighty cease and desist letters sent by the defendant, (3) "there [was] no other reasonably available word to describe the meaning captured by the term 'love potion,'" and (4) the physical appearance of the term supported descriptive use. *Id.* at 425–26.

Similarly, in *JA Apparel Corp. v. Abboud*, 682 F.Supp.2d 294, 300 (S.D.N.Y. 2010), where the designer, Joseph Abboud, had sold certain rights in the use of his name, the court found that the defendant's use of the name in ads containing the phrase "JAZ IS A NEW LUXURY COLLECTION CREATED BY THE AWARD-WINNING DESIGNER JOSEPH ABBOUD," was descriptive because the name described the designer of the clothing line, appeared as part of a sentence that was in smaller font than the defendant's trademark, and was the "only reasonably available means" to inform consumers of the identity of the designer. *Id.* at 313.

In *Something Old, Something New, Inc. v. QVC, Inc.*, No. 98-CV-7450 (SAS), 1999 WL 1125063, at *2 (S.D.N.Y. Dec. 8, 1999), plaintiff alleged that defendants infringed its trademarks for "MIZPAH" and "DEAREST" for jewelry by selling jewelry incorporating acrostics or inscribed with these terms. *Id.* at *3. To determine whether the use was descriptive, the court

examined the physical placement of the terms on the defendants' products and also noted that the terms "describe[d] some element of the jewelry they [were] naming" and that "the lexicon available to describe the jewelry in question [was] limited; to expect defendants to use unwieldy or long terms would be contrary to the purpose of the fair use defense." *Id.* at *6–7. The court observed that the defendants did not "place any special emphasis on the allegedly infringing terms," and concluded that the defendants' uses of the terms were descriptive. *Id.; but see id.* at *8 (finding triable issue as to good faith where there was question of fact about whether alternative terms were "equally useful or appropriate" but also noting that "defendants did not conduct a trademark search or consult with counsel prior to using the terms").

Also instructive is another case in which Solid 21 sued for alleged infringement of the same "RED GOLD" trademark at issue in this case. *Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19-CV1262 (LGS), 2020 WL 3050970, at *1 (S.D.N.Y. June 8, 2020). There, on a motion to dismiss and in the face of Solid 21's arguments about alternative terms such as "rose gold" and "pink gold," the court sustained a fair use defense as to an advertisement that featured the phrase "Limited edition of 500 watches each in platinum and 18-carat red gold." The court stated that "the only plausible reading of the term [was] 'red-colored gold,' even if 'red gold' may not be known to consumers as a type of metal alloy." *Id.* at *6. As to three other advertisements at issue, however, the Court refused to dismiss based on fair use, reasoning that "it [was] not evident [in those three ads] that all uses of 'Red Gold' are descriptive," because the term appeared in the product headings, not just (as in the first ad) the product descriptions, and because the court accepted as true Solid 21's allegations about consumer perceptions of the term and the reasonable availability of "rose gold" and "pink gold." *Id.*

Although all of these cases mention the existence or non-existence of alternative terms, none suggests that that this factor was essential to the court's finding regarding the descriptive use element.

In *Kensington Pub. Corp. v. Gutierrez*, No. 05-CV-10529 (LTS) (AJP), 2009 WL 4277080 (S.D.N.Y. Nov. 10, 2009), however, the court arguably relied solely only on the existence of alternative terms in finding a genuine dispute of material fact about descriptive use, although the analysis was so brief that it is difficult to be sure.  In *Kensington*, where the plaintiff alleged that the defendants' use of the term "Bad Boys" in book titles constituted trademark infringement, the court denied summary judgment on fair use because "a genuine issue of material fact exist[ed] as to whether Defendants acted in good faith," and "the record, construed in the light most favorable to Plaintiff, does not compel the conclusion that use of the term 'Bad Boys' is the only reasonably available means of describing a characteristic of Defendants' work."  *Id.* at *8.  The entire analysis of fair use, however, consists of two short paragraphs, neither of which sets forth or discusses separately the elements of the defense.  *Id.* at *8.  This case thus offers little guidance here.[1]

---

[1] Solid 21 cites *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos*, 228 F.3d 56 (2d Cir. 2000) and *Edible Arrangements, LLC v. Provide Commerce, Inc.*, No. 14-CV-00250 (VLB), 2016 WL 4074121 (D. Conn. July 29, 2016) as cases denying summary judgment where alternative terms were available, but both cases involved ample other evidence of non-descriptive use as well.  In *EMI*, the principal factor weighing against descriptive use was the repetition of the word 'swing' in ads for the defendant's golf clubs—as in, "Swing Swing Swing"—and the close resemblance of that pattern to "Sing, Sing, Sing," a Benny Goodman tune to which the plaintiff held the rights. 228 F.3d at 65 ("'Swing' undoubtedly describes both the action of using a golf club and the style of music used in the soundtrack.  Had the single word 'Swing' appeared in the commercial, it could not be doubted that defendants' use was descriptive," but "it was error to rule that the alliterative phrase actually used [i.e., "Swing, Swing, Swing"] was necessarily identical to the single descriptive word," because "[w]hile 'swing' is descriptive, 'swing, swing, swing is not necessarily so.").  While the court also mentioned that the term "hit it!" was an alternative, that was not the primary basis for its ruling.  In *Edible Arrangements*, the court cited the availability of alternative terms as one of two bases for concluding there was a genuine dispute of material fact about the *third* element of fair use – good faith.  *Edible Arrangements*, 2016 WL 4074121 at *14.  The court relied on other considerations to find a genuine dispute about descriptive use.  Specifically, it pointed to consumer perceptions of the word "arrangement" as connoting a creative presentation in finding that its use by the defendant in the phrase "edible fruit arrangements"— when the defendant was simply presenting fruit pieces equally spaced apart—was "descriptively misleading."  *Id.* at *14.  The court also found the defendant's use of the term "edible" to be redundant of the word "fruit," and concluded that there was a material issue of fact "as to whether [the defendant's] use of the phrase 'edible fruit

Apart from the absence of binding or persuasive authority treating the availability of alternative terms as dispositive of the descriptive use element, there is good reason in this case not to treat it as dispositive.  In a portion of the record that the parties and I overlooked when considering this issue—and yet one that stares out from the opening pages of the summary judgment ruling—there is evidence that Breitling has used both "red gold" and one of the terms Solid 21 identifies as an alternative— "rose gold" —in a descriptive manner, while at the same time reasonably distinguishing between the two phrases by applying them to watches of different hues.  Set forth below are two images reproduced at the outset of the summary judgment ruling and shown side-by-side on the same webpage of Breitling's website:



---

arrangements' relies upon the ordinary meanings of those words to describe a product containing a box of 'deliberately placed' strawberries."  *Id.*

*Solid 21*, 2021 WL 4430755 *2 (citing ECF No. 107-22).  Even a casual viewer notices that the colors of the watchbands in these two images are not the same, with the one on the left a darker, "red gold" shade and the one on the right a lighter "pink gold" or "rose gold" hue.  *See, e.g.,* Wikipedia entry for "Rose (color)" ("Rose is the color halfway between red and magenta on the HSV color wheel."); *Everything About the Color Rose Red*, Canva, https://www.canva.com/colors/color-meanings/rose-red/ ("Rose is a shade of red, not a pink. Because it sits between red and pink on the color wheel, rose looks like a mix of both colors – but it's actually closer to red than it is pink.") (both last visited on December 10, 2021).  When I found in the summary judgment ruling that "there [was] a factual dispute about whether 'rose gold' is a satisfactory descriptor to 'red gold,'" I likely overlooked these images (prominently displayed in the opinion though they were); but in any event, these side-by-side images from the same webpage of Breitling's website make clear that it was using "red gold" to describe a different hue from "rose gold."  Indeed, the juxtaposition of the images reinforces the conclusion that Breitling was using "red gold" in a descriptive sense to reflect the nuance of that particular color offering of its product.

       To issue a ruling that denies a fair use finding because Breitling declined to use the same color-connoting phrase—"rose gold," the alternative term proposed by Solid 21—to describe the two differently colored watches pictured above would turn the descriptive use element of the fair use defense on its head and prevent Breitling from distinguishing between two of its own products.  I therefore erred when I determined that there was a genuine dispute of material fact as to the descriptive use element simply because "Solid 21 raises a genuine dispute of material fact concerning the alternative terms available for 'Red Gold,'" *Solid 21*, 2021 WL 4430755 *11; and at least with respect to the two images above, I erred in finding that Solid 21 had raised a

genuine dispute of material fact about whether "rose gold" was an adequate substitute for "red gold." There is no triable issue on the descriptive use element. For the reasons set forth above and in the summary judgment ruling, Breitling has established that its use of "Red Gold" was descriptive.

### B. Good Faith

In the summary judgment ruling, I found that although the good faith element presented a "close call" and "although Breitling's advertisements do not use 'Red Gold' in a way that overshadows the Breitling mark," there was a genuine dispute of material fact as to Breitling's good faith because "Solid 21 [had] submitted evidence suggesting that Breitling began advertising in the same publications as Solid 21 using the 'Red Gold' mark," and this suggested that Breitling had "knowledge or constructive knowledge" of Solid 21's mark. *Id.* at *12. Breitling challenges this finding because (1) Solid 21's evidence showed only that the parties both advertised in a single magazine, *International Watch*, and years apart, and (2) Breitling need not prove a lack of knowledge or constructive knowledge. ECF No. 195-1 at 14–15. I agree with Breitling that I overlooked data in the record and that controlling Second Circuit law states that knowledge alone is insufficient for a finding of bad faith.

Breitling correctly points out that my statement that "Solid 21 has submitted evidence suggesting that Breitling began advertising in the same publications as Solid 21 using the 'Red Gold' mark" was erroneous. The evidence submitted by Solid 21 shows only that the parties both advertised in a *single* publication, *International Watch*, and any implication that the advertisements of the parties appeared in the same issue—thereby raising the possibility of consumer confusion—is not supported by the record, because the ads in the record appeared two years apart from each other. ECF No. 127-13 ¶ 12; *see* ECF No. 123-30 (showing a Breitling advertisement in an *International Watch* issue from 2013); ECF No. 126-1 at 38 ¶ 81, 40, 51

10

**SA-37**

(showing a Solid 21 advertisement in *International Watch* issue from 2011).  Further, Breitling used the term "red gold" to describe its watches as early as 2010, which preceded Solid 21's first advertisement in *International Watch*.  *See* ECF No. 107-9 at 22, 24, 65, 100 (showing a Breitling catalog from 2010 (*see* ECF No. 107-9 at 100) with multiple uses of "red gold").  Neither the statement in my summary judgment ruling, then, nor the evidence in the record supports a finding that Breitling had knowledge or constructive knowledge of Solid 21's mark due to "advertising in the same publications."

In any event, as Breitling points out, knowledge alone is insufficient for a finding of bad faith.  In *Car-Freshener Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 268 (2d Cir. 1995), the Second Circuit found no obstacle to fair use in the fact that the defendant adopted a tree shape for its air freshener "with knowledge of [the plaintiff's] use of the tree shape and without consulting counsel."  *Id.* at 270.  "As [the defendant] was fully entitled to use a pine-tree shape descriptively notwithstanding [the plaintiff's] use of a tree shape as a mark, the fact that it did so without consulting counsel has no tendency to show bad faith."  *Id*; *see also Something Old, Something New, Inc.*, 1999 WL 1125063, at *7 (finding that the "[k]nowledge of plaintiff's mark is not sufficient to show bad faith, especially where defendant believed the use was descriptive");  *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 339 (S.D.N.Y. 2010) (stating that the "mere fact that a defendant was aware of a plaintiff's mark is not necessarily inconsistent with a defendant's good faith").

In ruling on the summary judgment motion, I found no other evidence of bad faith.  Because I misconstrued the evidence on which I relied and overlooked controlling Second Circuit law, I conclude that I erred in finding that Solid 21 raised a genuine dispute of material fact as to good faith.  It did not, and I now find, after further consideration of the summary

judgment record, that Breitling has satisfied its burden of establishing, as a matter of law, this third and final element of its good faith defense.

### III.    CONCLUSION

For the reasons set forth above, Breitling's motion for reconsideration (ECF No. 195) is GRANTED, I VACATE the portion of my ruling regarding descriptive use and good faith, ECF No. 191 at 22–26, and I GRANT summary judgment to Breitling on its fair use defense.  I DENY as moot the request for an interlocutory appeal.


IT IS SO ORDERED.


_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                December 10, 2021

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SOLID 21, INC.,

    *Plaintiff*,

    v.

BREITLING U.S.A., INC.; BREITLING SA; AND
BREITLING AG,

    *Defendants*.

No. 3:19-cv-00514 (MPS)

**RULING ON MOTION FOR RECONSIDERATION**

    In this heated trademark battle about watches and jewelry described with the words "red gold," the Plaintiff ("Solid 21") now moves for reconsideration (ECF No. 206) of my ruling granting an earlier motion for reconsideration sustaining the fair use defense asserted by the Defendants (collectively, "Breitling"). ECF Nos. 204, 205. On December 10, 2021, I granted Breitling's motion for reconsideration, finding that I had overlooked both applicable law and portions of the summary judgment record in determining that there were genuine disputes of material fact as to fair use in my September 27, 2021 summary judgment ruling; on reconsideration, I found that there were not and granted Breitling summary judgment. *See* ECF No. 204. Solid 21 now asks me to revisit that conclusion.

    I assume familiarity with my September 27 and December 10 rulings; I incorporate by reference herein the legal standards set forth in those rulings; and I set forth below only so much reasoning as is necessary to explain my decision to DENY Solid 21's motion.

    To begin with, Solid 21's motion does not satisfy the strict standard for motions for reconsideration. *See* D. Conn. L. R. 7. It could have raised in its January 26, 2021 opposition to summary judgment some of the arguments it now makes for the first time. Examples include its

1

**SA-40**

argument about hashtags, which is based in part on an article from June 2020 (ECF No. 206-11),

its argument about Breitling's purported notice of Solid 21's mark, which is based on a 2011

lawsuit and the 2003 registration of that mark (ECF No. 209 at 16), and its argument that

Breitling used "rose gold" and "red gold" at different times to describe the same watch, which is

based on discovery materials Breitling produced in December 2020.  *See* ECF No. 209 at 13

(relying on Exhibit 7, ECF No. 206-8 at 5); ECF No. 212-1 at 2 (declaration that Exhibit 7 was

produced in December 2020); ECF No. 215 (Solid 21's Reply juxtaposing images of Breitling

watches that were available when Solid 21 filed its opposition to summary judgment); *see*

*generally Belfiore v. Procter & Gamble Co.*, 140 F. Supp.3d 241, 244 (E.D.N.Y. 2015) ("In a

motion for reconsideration, a party may not introduce new facts or raise new arguments that

could have been previously presented to the court.").  Further, Solid 21 could have submitted all

of the evidence attached to its motion for reconsideration before now.  It is true that Breitling

filed its motion for summary judgment early and Solid 21 sought time to complete discovery

before responding—a request I denied as moot when I denied summary judgment in September

2021.  ECF Nos. 114 & 191.  It is also true that several of the exhibits attached to Solid 21's

motion for reconsideration were not available to it when it filed its opposition to summary

judgment on January 26, 2021, including discovery materials the Court later compelled Breitling

to produce.  But as Breitling notes, Solid 21 could have sought to supplement the summary

judgment record with these materials, as the Court did not decide the motion until three months

after Solid 21 had obtained the missing discovery items.  Worse, Solid 21 did not submit, and

made no mention, of these materials when it opposed Breitling's October 4, 2021 motion for

reconsideration on the issue of fair use.  *See* ECF Nos. 196 & 199.  It is not clear why, if Solid 21

considered these materials "highly pertinent" to the fair use defense, ECF No. 209 at 4, it did not

file them with its opposition to Breitling's motion for reconsideration, which asked me to revisit the issue of fair use.

All that said, given Breitling's early motion for summary judgment and the Court's subsequent order compelling Breitling to produce the additional discovery materials, I have considered Solid 21's exhibits derived from those materials—as well as all other exhibits attached to its motion for reconsideration—in deciding that motion. Because the compelled discovery materials are the most significant items Solid 21 did not have when it filed its opposition to summary judgment, I focus on those items in the discussion below.

None of the newly submitted materials leads me to conclude that I erred in granting summary judgment to Breitling on fair use. Although some of these materials call into question one aspect of my ruling granting Breitling's motion for reconsideration—the portion in which I suggested that Breitling's use of "red gold" and "rose gold" was a deliberate effort to assign nuanced descriptors to slightly different hues of its products, ECF No. 204 at 8–9—that aspect was not essential to my ruling. Instead, as the ruling explains, the critical point was that I had overlooked the law on the significance of "alternative terms" in assessing the descriptive element of the fair use defense in my summary judgment ruling. *Id.* at 4–7. I would have reached the same conclusion that Breitling had sustained its fair use defense as a matter of law without my discussion of the side-by-side images of the two Breitling watches that appear (overall) to be of slightly different hues, one mentioning "red gold," the other "rose gold." This is so because, as I explained, "the existence or non-existence of alternative terms" has not been "essential" to courts' findings regarding the descriptive use element of fair use within the Second Circuit. *Id.* at 7.

None of the evidence Solid 21 has now submitted—including Breitling's internal logs of calls with customers and screenshots from Breitling's website showing it has, at different times, described the same watch with the words "red gold" and "rose gold"—suggests that Breitling has made non-descriptive use of either of these terms or that it has used the descriptor "red gold" in bad faith.  The three customer call logs excerpted in Solid 21's brief provide little support for its argument.  They are internal documents reflecting conversations between a customer and a Breitling employee and say little about how Breitling presents its products to the world in advertisements.  In addition, they do not suggest that Breitling used "red gold" "inten[ding] to trade on the good will of [Solid 21] by creating confusion as to source or sponsorship."  *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66 (2d Cir. 2000).  Instead, the logs show that the customers had questions about the colors available for a particular watch model, *see* ECF No. 209 at 9 (Customers asked: "[D]oes this timepiece come in both regular and rose gold" and "Whats [sic] the difference between rose gold and red gold."), not that the customers were confused about the "source or sponsorship" of the watches.  Further, if anything, these documents suggest that Breitling employees use "red gold" and "rose gold" in a descriptive manner to describe the color of its watches even in one-on-one customer interactions.  *See* ECF No. 209 at 9 (Breitling employee responding to customer that "[t]his time piece is only *available in 'red-gold'* which is what we consider rose gold," and another employee responding to customer question about "the difference between rose gold and red gold" with: "They are both a *rose gold color*."  (emphasis added)).  While these documents and the deposition testimony of Breitling executives Solid 21 cites suggest that there are inconsistencies between the ways some Breitling employees describe the colors of its products, there is no evidence that those inconsistences reflect an attempt to trade on Solid 21's good will or create confusion as to source

or sponsorship.  To the contrary, the call logs and deposition testimony suggest that Breitling employees use both "red gold" and "rose gold" to describe a characteristic of the company's products, i.e., color.

The images Solid 21 features in its motion only confirm good-faith, descriptive use.  Far from suggesting that Breitling is "label[ing] … as 'red gold'" products that some of its employees see as "rose gold" in color "to draw attention and exploit [Solid 21's] goodwill and cachet," ECF No. 209 at 10, these images make clear that Breitling is using "Red Gold" descriptively, just as it is using the other materials and colors that characterize its watches:



U17325211G1P2

**NAVITIMER AUTOMATIC 38**

Stainless Steel & 18k Red Gold - Silver
USD 6,150  ⓘ



U17325211G1U1

**NAVITIMER AUTOMATIC 38**

Stainless Steel & 18k Red Gold - Silver
USD 8,700  ⓘ



U17325211G1P1

**NAVITIMER AUTOMATIC 38**

Stainless Steel & 18k Red Gold - Silver
USD 5,900   ⓘ

U17325211G1A1

**NAVITIMER AUTOMATIC 38**

Stainless Steel & 18k Red Gold - Silver
USD 6,400   ⓘ

*Id.*  All these images come from Breitling's website and show Breitling's name on the watch face.  And in all of them, the name of the Breitling watch model, "Navitimer," appears in large, bold-faced type, while "Red Gold" appears beneath, in regular type, on a line next to other descriptors of color, weight, and material.  When these images are considered in their "overall context," *EMI Catalogue P'ship*, 228 F.3d at 66 (in assessing good faith in fair use analysis, "a court must take into account the overall context in which the marks appear and the totality of factors that could cause consumer confusion"), it is hard to see how they "exploit" Solid 21's "goodwill and cachet," ECF No. 209 at 10, simply because it has trademarked two of the words that appear in the line describing the watches' color, weight, and material.

For similar reasons, the evidence Solid 21 has submitted showing that Breitling used "red gold" and "rose gold" at different times to describe the same watch—which, as noted above, is not "new" evidence at all and is not a proper basis for reconsideration—does not cause me to rethink my earlier ruling.  ECF No. 209 at 9–15.  The uses of the different hue designations were

6

descriptive on each occasion in the same way that the use of "red gold" as a color/material descriptor in the images above is descriptive.  On each occasion, the use of either "red gold" or "rose gold" came from Breitling's website or catalogue, was paired with other color and material descriptors such as "stainless steel" and "mother-of-pearl," was placed beneath the Breitling mark and/or model name, and did not appear designed to attract public attention or indicate the source of the goods.  *See* ECF No. 209 at 12–14 (showing images).  Again, the use and physical placement of "red gold" in these images do not suggest that Breitling intended to "trade on the good will" of Solid 21.  Nor does Solid 21 point to any evidence that Breitling's decision to use "red gold" and "rose gold" interchangeably was part of an effort to confuse consumers as to the "source or sponsorship" of the watches.  The fact that Breitling has at times used an alternative term to describe a product does not mean that its use of the words comprising the mark to describe the product on other occasions is non-descriptive or in bad faith.

Solid 21 points out that in *EMI*, the Second Circuit found that "[t]he availability of other descriptive terms and a decision not to use one of those terms is also evidence suggesting bad faith."  228 F.3d at 67.  In that case, however, there was ample other evidence of bad faith, including that an earlier version of the defendants' commercial "was intended to trade on the good will in the [trademarked song], because defendants contemplated paying for the right to do just that" but then used the same lyrics to different music because "the cost to license the song was too high."  *Id.*  More importantly, as noted, the Second Circuit in *EMI* instructed that "a court must take into account the overall context in which the marks appear and the totality of factors that could cause consumer confusion" when assessing the good faith element of the fair use defense.  *Id.* at 66; *see also id.* at 66-67 ("Because the good faith inquiry in a fair use analysis necessarily concerns the question whether the user of a mark intended to create consumer

confusion as to source or sponsorship, we think that the same contextual considerations apply to a court's analysis of good faith in the fair use defense …."). As I have explained, no reasonable juror considering "overall context in which the marks appear" in the images set forth above or on pages 9-11 of Solid 21's brief could conclude that Breitling was seeking to create consumer confusion as to the source or sponsorship of its watches.

Finally, Solid 21's argument that Breitling's use of "red gold" is "descriptively misleading," ECF No. 209 at 15, because it is allegedly using the term to describe its "rose gold products" contradicts the position Solid 21 took earlier in the case that the two terms were synonymous. ECF No. 123 at 32–33, 37.[1] In fact, the evidence attached to Solid 21's motion suggests that the two terms are regarded by many, including some Breitling customers and employees, as synonymous. But as shown in my ruling granting Breitling's motion for reconsideration, the existence of an alternative term to describe a product is, by itself, insufficient to raise a genuine dispute of material fact about the descriptive use element, at least under the circumstances of this case.

I do not find any of Solid 21's other arguments, to the extent they are based on evidence or reflect points that could not have been submitted earlier, to warrant reconsideration of my ruling granting summary judgment to Breitling on fair use. And because I have considered the evidence attached to Solid 21's motion, some of which it obtained after it was required to file its opposition to summary judgment, I see no need to revisit my ruling denying Solid 21's motion for extension of time to respond to the summary judgment motion. *See* ECF Nos. 114, 191. Therefore, Solid 21's motion for reconsideration (ECF No. 206) is DENIED.

---

[1] As shown above, to the extent this argument is based on the evidence that Breitling described the same watch at different times using "rose gold" and "red gold," it is one Solid 21 could have raised in opposition to summary judgment and so is not a proper basis for reconsideration.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:         Hartford, Connecticut
               January 24, 2022

9

**SA-48**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

<table>
<tr><td>

SOLID 21, INC.,

     *Plaintiff*,

v.

BREITLING U.S.A., INC.; BREITLING SA; AND
BREITLING AG,

     *Defendants*.

</td><td>

No. 3:19-cv-00514 (MPS)

</td></tr>
</table>

**RULING AS TO REMAINING CLAIMS**

On December 10, 2021, I ordered the parties to file briefs addressing whether I should grant summary judgment on all remaining claims following my ruling granting summary judgment to the Defendants (collectively "Breitling") on the fair use defense.  ECF No. 205.  I have reviewed the briefs submitted by the parties in response to that order.  ECF Nos. 210 and 213.  After doing so, I GRANT summary judgment to Breitling as to all remaining claims in the case and instruct the Clerk to close this case for the reasons set forth in this ruling.  I assume familiarity with my prior rulings and with the parties' briefs.

In its brief, Plaintiff Solid 21, Inc. ("Solid 21") argues that my ruling granting summary judgment as to fair use does not dispose of two of the eight causes of action in its complaint—the Fifth Cause of Action, which is entitled "False Description under the Lanham Act, 15 U.S.C. Sec. 1125(a)," and the Eighth Cause of Action which is entitled "Unfair Competition and Deceptive Acts and Practices under the Connecticut Unfair Trade Practices Act, CGSA Sec. 42-110b."  ECF No. 1.  More specifically, Solid 21 argues that its Fifth Cause of Action includes a claim for "false advertising" in violation of 15 U.S.C. Sec. 1125(a) and

suggests that the false advertising claim is that "Breitling advertises their watches as 'Red Gold' even though they are actually made of 'Rose Gold.'"  ECF No. 210 at 4.  Solid 21 further argues that any Lanham Act violation is also a violation of the Connecticut Unfair Trade Practices Act, which means that its claim for false advertising, in effect, also sustains its CUTPA claim.  ECF No. 210 at 4.  The problem with Solid 21's argument is that the complaint does not plead a claim of false advertising or any claim based on Breitling's alleged advertising as "Red Gold" watches that "are actually made of Rose Gold."   The core allegations of the complaint are, instead, that Breitling used Solid 21's "Red Gold" trademark in commerce in a manner likely to cause confusion as to the source of Breitling's goods and thereby infringed the mark.  ECF No. 1 ¶¶ 20–25.  Building on these allegations, Solid 21's Fifth Cause of Action alleges that "Defendants' commercial use of the RED GOLD® mark in the design, manufacturing, marketing, advertising, and/or sale of their products is *likely to create confusion, cause mistake, or deceive consumers as to the affiliation, connection, or association of Solid 21's products, or to deceive consumers as to the origin, sponsorship, or approval of Solid 21's products*, all in dilution of the distinctive quality of the RED GOLD® mark" and that "Defendants' use of the term RED GOLD® comprises a false description and/or representation of such business or products under 15 U.S.C. § 1125(a), Section 43(a) of the Lanham Act."  ECF No. 1 ¶¶ 57, 58 (emphasis added).

As Solid 21 recognizes (ECF No. 210 at 2), Section 1125(a)(1) of the Lanham Act prohibits two types of "false or misleading description[s] of fact": (A) one that is "*likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person*"; and (B) one that "in

2

commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. §§ 1125(a)(1)(A)&(B) (emphasis added).  The language of Solid 21's Fifth Cause of Action, quoted above, and the core allegations of the complaint plainly invoke the first type, i.e., trademark infringement, rather than the second type, i.e., false advertising.  Indeed, the phrase "false advertising" appears nowhere in the complaint.  Nor is there any reference to "rose gold" or to Breitling's advertising as "Red Gold" watches "actually made of Rose Gold." The Eighth Cause of Action, the CUTPA claim, similarly rests on the claim of infringement and makes no reference to false advertising.  *See* ECF No. 1 ¶¶ 71a & 71b ("71a. By the unauthorized use, distribution, offer for sale, advertising, and/or sale of goods, including the infringing watches, bearing the RED GOLD® mark" and "By their unauthorized distribution, advertisement, promotion, offering for sale, and/or sale of products bearing marks confusingly similar to the RED GOLD® mark, Defendants have engaged in consumer-oriented conduct that has affected the public interest of Connecticut and has resulted in injury to consumers in Connecticut.").

This is the way the parties construed the complaint in the briefing related to Breitling's summary judgment motion.  Breitling moved for summary judgment as to all counts of the complaint (ECF No. 107-1) but made no mention of false advertising in its brief, while Solid 21's response did not suggest that Breitling's motion covered anything less than the entire complaint.

Solid 21's final argument is that I ruled on fair use "on a nonexistent record," because Breitling filed its summary judgment motion "while there had barely been any discovery conducted."  ECF No. 210 at 4.  To the extent this argument seeks reconsideration of

my ruling granting summary judgment to Breitling as to fair use, I have already denied Solid 21's motion for reconsideration on that issue.  ECF No. 216.  And in doing so, I considered documents Solid 21 submitted from discovery materials it obtained from Breitling after the filing of the summary judgment briefs.  Accordingly, Solid 21 received an opportunity, in effect, to supplement the summary judgment record with discovery materials not available to it when it submitted its January 26, 2021 opposition to summary judgment.  In any event, the adequacy of the summary judgment record is not relevant to whether I should allow Solid 21 to press claims it did not plead.

Because Solid 21's Fifth and Eighth Causes of Action are either trademark infringement claims or wholly derivative of trademark infringement claims, and because I have granted Breitling summary judgment on its fair use defense to trademark infringement, I grant summary judgment to Breitling as to the Fifth and Eighth Causes of Action as well.  Because there are no remaining claims and because Breitling's counterclaims are moot, the Clerk is directed to close this case.

IT IS SO ORDERED.


_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                January 24, 2022


4

SA-52

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


SOLID 21, INC.


      v.                                                    CASE NO. 3:19CV514(MPS)

BREITLING USA, INC
BREITLING SA
BREITLING AG
CVC CAPITAL PARTNERS SICAV-FIS, S.A.



## JUDGMENT

This action having come on for consideration of the defendants' motion for summary judgment

before the Honorable Michael P. Shea, United States District Judge and,

The court having considered the motion and the full record of the case including applicable principles

of law, and having filed its Ruling on January 24, 2022 granting the motion as to all remaining claims; and

Further, claims against CVV Capital were dismissed on August 12, 2019;  it is therefore

ORDERED, ADJUDGED and DECREED that judgment be and is hereby entered in favor of the

defendants dismissing the case.

Dated at Hartford, Connecticut, this 27th day of January 2022.



DINAH MILTON KINNEY, Clerk


By _____/s/_____
Devorah Johnson
Deputy Clerk

EOD__1/27/22___

Case 3:19-cv-00514-MPS   Document 219   Filed 01/27/22   Page 2 of 2

**15 U.S.C. § 1115.  Registration on principal register as evidence of exclusive right to use mark; defenses**

**(a) Evidentiary value; defenses**

Any registration issued under the Act of March 3, 1881, or the Act of February 20, 1905, or of a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b) of this section, which might have been asserted if such mark had not been registered.

**(b) Incontestability; defenses**

To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. Such conclusive evidence shall relate to the exclusive right to use the mark on or in connection with the goods or services specified in the affidavit filed under the provisions of section 1065 of this title, or in the renewal application filed under the provisions of section 1059 of this title if the goods or services specified in the renewal are fewer in number, subject to any conditions or limitations in the registration or in such affidavit or renewal application. Such conclusive evidence of the right to use the registered mark shall be subject to proof of infringement as defined in section 1114 of this title, and shall be subject to the following defenses or defects:

(1) That the registration or the incontestable right to use the mark was obtained fraudulently; or

(2) That the mark has been abandoned by the registrant; or

(3) That the registered mark is being used by or with the permission of the registrant or a person in privity with the registrant, so as to misrepresent the source of the goods or services on or in connection with which the mark is used; or

(4) That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin; or

(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this chapter if the application for registration is filed before the effective

date of the Trademark Law Revision Act of 1988, or (C) publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved; or

(6) That the mark whose use is charged as an infringement was registered and used prior to the registration under this chapter or publication under subsection (c) of section 1062 of this title of the registered mark of the registrant, and not abandoned: *Provided, however,* That this defense or defect shall apply only for the area in which the mark was used prior to such registration or Such publication of the registrant's mark; or

(7) That the mark has been or is being used to violate the antitrust laws of the United States; or

(8) That the mark is functional; or

(9) That equitable principles, including laches, estoppel, and acquiescence, are applicable.

**CERTIFICATE OF SERVICE**

I, Amy Mason Saharia, counsel for appellant and a member of the Bar of this Court, certify that, on June 7, 2022, a copy of the attached Special Appendix of Appellant was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

JUNE 7, 2022

/s/ *Amy Mason Saharia*
AMY MASON SAHARIA