PARK, *Circuit Judge*, dissenting:

We don't know why Breitling began using the disputed "red gold" mark in 2010. But the majority still concludes that Breitling proved good-faith fair use, and to get there, it resolves factual disputes about Breitling's mental state at summary judgment. I respectfully dissent because those are issues for a jury to decide.

A trademark defendant raising a fair-use defense has the burden to show that it did not act in bad faith—*i.e.*, that it lacked "the intent to sow confusion between the two companies' products." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 88 (2d Cir. 2020). This turns on a fact-intensive, totality-of-the-circumstances judgment; the jury must consider "[a]ny evidence that is probative of intent to trade on the protected mark." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66 (2d Cir. 2000) (emphasis added). So "we have consistently observed" that the good-faith element is "singularly inappropriate for . . . summary judgment." *Tiffany & Co.*, 971 F.3d at 88. The majority sees this as a case in which "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). I disagree.

The main question on good faith is why Breitling decided to start using "red gold" instead of "rose gold" to sell some of its watches, which otherwise remained the same. This apparently occurred in 2010, well after Solid 21 trademarked the term. And "where the allegedly infringing mark is identical to the registered mark, and its use began subsequent to the plaintiff's trade-mark registration, the defendant must carry the burden of explanation." *Tiffany & Co.*, 971 F.3d at 88. Neither Breitling nor the majority has

even attempted to provide a plausible explanation for the sudden change.[1]

Against the backdrop of this unanswered question, Breitling admits that it began its "red gold" marketing without conducting a trademark search. To be sure, this failure was not *per se* bad faith. But in general, and particularly when there is uncertainty, a trademark search is consistent with good faith, and the lack of it is consistent with bad faith. *See Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 964 (2d Cir. 1996) (reversing a grant of summary judgment to a defendant who "neither consulted with an attorney nor conducted a trademark search").[2]

There are more reasons why a jury might not give Breitling the benefit of the doubt. It could find that Breitling had actual or constructive knowledge of Solid 21's "red gold" mark, which was repeatedly covered in trade and popular publications before Breitling's use. Again, everything is relevant, and nothing is dispositive. *See, e.g., Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995) ("Prior knowledge of a senior user's trade mark

---

[1] The majority explains that "red gold" is a longstanding scientific description of a particular gold alloy. *See* Maj. Op. at 5-6. This has two problems. First, as a logical matter, it attempts to explain a change with a constant. And second, as a factual matter, the evidence shows that Breitling used "red gold" and "rose gold" interchangeably, not to describe two scientifically distinct alloys.

[2] In the only case in which we appear to have affirmed a grant of summary judgment on good faith despite the lack of a trademark search, *Savin Corp. v. Savin Grp.*, 391 F.3d 439 (2d Cir. 2004), the failure to perform the search was harmless because the mark was registered for use only in a different industry, *see id.* at 460. That is not the case here.

does not *necessarily* give rise to an inference of bad faith." (emphasis added)). A reasonable jury could find that Breitling knew about the "red gold" mark and used it anyway, which would undercut its claim of good faith. *See Kelly-Brown v. Winfrey*, 717 F.3d 295, 313 (2d Cir. 2013) (collecting cases).

Finally, there is evidence that Breitling's prior use of "rose gold" was not just an adequate substitute for "red gold," but a superior one. For example, Solid 21 presented an affidavit from a former senior executive at competitor watchmakers stating that "red gold" is not a term used by luxury-watch consumers, as well as survey evidence that consumers do not consider "red gold" a potential watch material. "The availability of other descriptive terms and a decision not to use one of those terms is . . . evidence of bad faith." *EMI*, 228 F.3d at 67. This is especially true when the alternative is both known to the defendant and a better descriptor.

In short, the record shows that Breitling (1) relatively recently began using the "red gold" mark, (2) without conducting a trademark search, (3) possibly knowing of Solid 21's use, (4) despite previously using a substitute, "rose gold." In response, Breitling offers no explanation for the change whatsoever. To my mind, a reasonable jury could find bad faith based on those facts.

The majority reasons that Breitling acted in good faith because its use was descriptive. *See* Maj. Op. at 23. But this sequencing effectively eliminates the good-faith prong. Under the majority's reading, either (1) the defendant's use is descriptive, in which case it is also in good faith, or (2) the defendant's use is not descriptive, in which case it cannot show fair use and its good faith doesn't matter.

3

This approach minimizes good faith as an independent element of a fair-use defense. *See, e.g.*, *Tiffany & Co.*, 971 F.3d at 92.

In any case, the descriptiveness question also should go to the jury. First, we "more readily find a phrase descriptive when it is in common usage," *Kelly-Brown*, 717 F.3d at 311, and Solid 21's evidence tends to show that "red gold" lacks a meaning to consumers. For example, its witness opined that "'Red Gold' is not a metal, but a marketing tool" associated uniquely with Solid 21 and not otherwise used in the industry. App'x at JA-3646 to -49. Second, the availability of "other terms . . . to describe the pertinent characteristic" counsels against finding a use descriptive. *EMI*, 228 F.3d at 65. As discussed above, Breitling in fact used the common term "rose gold" to describe its watches (rather than Solid 21's "red gold" mark) up until its unexplained change in 2010.

The fair-use analysis in this case is not obvious. The parties briefed it exhaustively. The district court itself was of two minds—it initially denied summary judgment, then granted it on reconsideration. A different district court in this circuit recently denied summary judgment on fair use in a related case.[3] And now we do not agree either. We have counseled district courts to use summary judgment with restraint in cases involving questions of good faith. *See Tiffany & Co.*, 971 F.3d at 88. We should follow our own advice. I respectfully dissent.

---

[3] *See Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19-CV-1262-LGS, 2023 WL 3996530 (S.D.N.Y. June 14, 2023).